LESTER J. MARSTON – California SBN 081030
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, CA 95482
Telephone: 707-462-6846
Facsimile:  707-462-4235
e-mail: marston1@pacbell.net

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, | Case No. |
| Plaintiff | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MONEY DAMAGES |
| v. | |
| RABOBANK, a national banking association, REGGIE LEWIS, CARL BUSHMAN, and CHANCE ALBERTA, | |
| Defendants. | |

## INTRODUCTION

1. This is an action brought by the Picayune Rancheria of Chukchansi Indians ("Tribe"), a federally recognized Indian Tribe against the Rabobank ("Bank"), a national banking association, and Chance Alberta, Carl Bushman, and Reggie Lewis ("Lewis Group") who are members of the Tribe's Tribal Council seeking an order from this Court recognizing and enforcing the provisional and preliminary orders rendered by the Picayune Rancheria Tribal Court ("Tribal Court"), against the Bank and Lewis Group.

2. The Tribe filed suit against the Bank in Tribal Court for breach of contract for refusing to release to the Tribe funds maintained in the Tribe's bank accounts ("Accounts").  The Tribe sought and obtained a temporary restraining order and then a preliminary injunction from the Tribal Court ordering the Bank during the

pendency of the action to pay a portion of the funds in the Accounts to the bondholders who loaned the Tribe the money to construct its existing hotel and Casino, as required by the Tribe's Casino loan agreement.  The Tribe also sought and obtained an order from the Tribal Court: (1) directing the Bank to interplead the funds remaining in the Accounts with the Tribal Court; (2) prohibit any withdrawal of the funds from the Accounts except by order of the Court, and (3) establish a procedure for withdrawal of the funds to pay the legitimate operating expenses of the Casino.  The Tribe seeks to have this Court recognize and enforce the orders issued by the Tribal Court pursuant to the doctrine of comity until such time as the defendants have exhausted their tribal court remedies as required *National Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985).

**JURISDICTION**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the Tribe's claims arise under the Constitution and laws of the United States, and 28 U.S.C. § 1362, in that the Tribe is a federally recognized Indian tribe and the Tribe's claims arise under the Constitution, laws, or treaties of the United States.

**VENUE**

4. Venue is proper in this Court, pursuant to 28 U.S.C. §1391, in that the defendant Bank and all of the individual defendants reside in this District, the Tribe's claims arose within this District, and the property that is the subject of this action was generated and is located within this District.

**PARTIES**

5. The Tribe is a federally recognized Indian tribe, recognized by the Secretary of the United States Department of the Interior as maintaining a government-to-government relationship with the Tribe.

6. The Bank is a national banking association chartered by the Comptroller of currency under the laws of the United States, with its principal place of business located at 915 Highland Point Drive, Suite 350, Roseville, California 95747. The Bank is

sued in its independent corporate capacity.

7.  Defendants Chance Alberta ("Alberta"); Carl Bushman ("Bushman") and Reggie Lewis ("Lewis") are each enrolled members of the Tribe and members of the Tribes seven (7) member Tribal Council.

**GENERAL ALLEGATIONS**

8.  The Tribe is organized under a written constitution ("Constitution") which designates the Picayune Tribal Council as the governing body of the Tribe. A copy of the Tribe's Constitution is hereby incorporated by this reference and attached hereto as **Exhibit A**.

9.  Under Article IV, Section 2 of the Constitution, the Tribal Council is composed of seven persons who are elected by the eligible voting members of the Tribe. Under Article VI, Section 2, of the Tribe's Constitution, a quorum of the Tribal Council consists of four members, and no business of the Tribal Council shall be transacted unless a quorum is present. Under the Tribe's Constitution, the Tribal Council can only transact business at a regular or special meeting of the Tribal Council.

10. The members of the current Tribal Council are Nancy Ayala, Chair; Reggie Lewis, Vice Chair; Tracey Brechbuehl, Secretary; Karen Wynn, Treasurer, Charles Sargosa, Council Member at Large, Chance Alberta, Council Member at Large; and Carl Bushman, Council Member at Large.

11. The Tribe is the owner and operator of a destination resort and casino ("Casino") consisting of, among other things, a 400 room hotel and a gaming facility consisting of approximately 1,800 slot machines, 23 table games, and a variety of restaurants and entertainment venues. The Tribe operates the Casino under the fictitious business name of "Chukchansi Gold Resort and Casino." The Casino employs approximately 1,200 people, who are both tribal members and non-members.

12. The Casino is the Tribe's principal source of revenue with which to perform essential tribal governmental functions, programs, and services, and to accomplish tribal objectives, including, but not limited to, providing tribal members

with employment and the income necessary to maintain a viable, self-sufficient tribal community.

13. Lacking the capital with which to construct and operate the Casino, the Tribe sought and obtained a loan ("Loan") in the approximate amount of $240 Million Dollars. The loan is secured by an indenture. Under the repayment terms of the note and indenture executed by the Tribe in connection with the Loan, the Tribe is obligated to make bi-yearly payments to the Wells Fargo Bank on behalf of the lenders or bond holders in the approximate amount of $28 Million.

14. In order to operate the Casino, the Tribe entered into an agreement ("Agreement") with the Bank. Under the terms of the agreement, the Tribe maintains a variety of accounts, including, but not limited to, account numbers 9592715114, 9284097971, 9545356527, 9616856342, 9284337762, 9350033242, and 9387666198, ("Accounts"), with the Bank. The Tribe deposits the revenues generated from the operation of the Casino into the Accounts maintained at the Bank. From these Accounts, the Tribe pays the operating expenses of the Casino and pays money to the Tribe for the operation of the Tribe's government and other economic development projects. Under its Agreement with the Bank, the Bank agreed to pay any check or warrant executed by persons authorized by the Tribal Council to sign checks. The Bank further agreed that the Tribal Council has the authority to designate who the check signers are on the Accounts.

15. Between January 24, 2013, and February 24, 2013, a dispute ("Dispute") arose between members of the Tribal Council. Motions were allegedly passed by subgroups of the Tribal Council suspending and reinstating various Tribal Council members during this period.

16. None of the suspensions of the members of the Tribal Council arising from the Dispute were valid because they were not done in accordance with the Tribe's Constitution, By-Laws, and Ethics Ordinance. A copy of the Tribe's By-Laws and Ethics Ordinance are hereby incorporated by this reference and attached hereto as

**Exhibits B** and **C**, respectively.

17. As a result of the Dispute, the Tribal Council divided into two factions, one consisting of a majority of the Tribal Council, Nancy Ayala, Tracey Brechbuehl, Karen Wynn, and Charles Sargosa ("Ayala Faction"), and a second minority faction consisting of Reggie Lewis, Chance Alberta, and Carl Bushman. ("Lewis Faction").

18. Article VI, Section 2 of the Tribe's Constitution provides that four Tribal Council members constitutes a quorum of the Tribe's Tribal Council and that the Tribal Council can only conduct business where a quorum is present. Only the Ayala Faction can establish a quorum of the Tribal Council.

19. On or about February 25, 2013, the Lewis Faction stated to officials of the Bank that it had the authority to withdraw funds from the Accounts and to designate which check signers were authorized to withdraw funds from the Accounts.

20. On or about March 4, 2013, the Ayala Faction provided the Bank with documents and relevant legal authorities demonstrating that the suspensions from the Tribal Council were invalid, that the Tribal Council still consisted of all seven members of the Tribal Council, and that the Lewis Faction had no authority to withdraw funds from the Accounts or designate check signers for the Accounts.

21  The Bank breached the Agreement with the Tribe by refusing to recognize the Tribal Council, as a whole, as the duly constituted and governing body of the Tribe with the authority to withdraw funds from the Accounts and to designate check signers for the Accounts.  Instead, the Bank recognized the Lewis Faction, which cannot establish a quorum of the Tribal Council as having the authority to withdraw money from the Accounts and designate check signers for the Accounts.

22. On or about March 14, 2013, the Bank permitted the Lewis Faction to withdraw funds from the Accounts, despite the knowledge that the Dispute had occurred, that both factions claimed to represent the Tribe, that the alleged suspensions and reinstatements did not occur at a duly noticed regular or special meeting of the Tribal Council and that the Lewis Faction did not constitute a quorum

1  of the Tribal Council.

2      23.    The Accounts are the general operating accounts that the Tribe maintains in connection with the operation of the Casino, and the Tribe's Chukchansi Economic Development Authority ("CEDA"). From these Accounts, the Tribe issues checks to pay for virtually all goods, services, wages, payment of prizes, capital improvements, and all other expenses incidental to the operation of the Casino and the Tribe's Tribal government, as well as for payments to Wells Fargo Bank in accordance with the promissory note and indenture executed in connection with the Tribe's Loan.

    24.    In order to continue operating the Casino, and to pay for the goods, services, prizes, and salaries incurred thereby and to pay to the Tribe the money necessary to continue to operate the Tribal government, the Tribal Council must be able to designate who the check signers are on the Accounts and deposit funds into and withdraw funds from the Accounts.

    25.    On March 15, 2013, at a duly noticed special meeting of the Tribal Council, with a quorum of the Tribal Council present, a majority of the Tribal Council voted to file suit against the Bank in the Picayune Rancheria of Chukchansi Indians Tribal Court and seek a order against the Bank to prevent it from allowing the Lewis Faction to withdraw funds from the Accounts and to require the Bank to interplead the funds in the Accounts with the Tribal Court, pending the resolution of the Tribal Court litigation ("Tribal Court Action").

    26.    At the same March 15, 2013 special meeting, the majority of the Tribal Council voted to suspend Lewis, Alberta, and Bushman from the Tribal Council, based on written allegations made by Ayala, Brechbuehl, Wynn and Sargosa of a number of violations of the Tribal law.

    27.    On or about March 17, 2013 Lewis, Alberta and Bushman were each served with a notice of suspension from the Tribal Council pending a hearing on whether they should be removed from office.

    28.    A hearing has been scheduled for May 23, 2013, on the question of

whether Lewis, Alberta, and Bushman should be removed from the Tribal Council. Written notice of the hearing and the charges was served on Lewis, Alberta and Bushman on April 16, 2013. A true and correct copy of the notice of hearing and charges is attached hereto as **Exhibit D**.

29. On March 15, 2013, legal counsel for the Tribal Council notified the Bank's legal counsel that the Tribal Council had filed a complaint against the Bank for breach of contract and for interpleader, and would be seeking a temporary restraining order directing the Bank to interplead the money in the Accounts with the Tribal Court. Counsel for the Tribal Council provided the Bank's legal counsel with a copy of the complaint, a motion for a temporary restraining order, a memorandum of points and authorities in support of the motion, and three declarations in support of the Tribal Council's motion. True and correct copies of the Complaint and temporary restraining order motion papers are hereby incorporated by this reference as if set forth here in full and attached hereto as **Exhibits E-L**, respectively. The Tribal Council's legal counsel also informed counsel for the Bank that the Tribal Court would hold a hearing on the motion later that afternoon, and provided a telephone conference call telephone number and password so that the Bank's legal counsel could appear by phone and participate in the hearing on the motion.

30. On March 15, 2013, at approximately 4:30 p.m., Pacific Standard Time ("PST"), the Tribal Court held a hearing on the Tribe's motion for a temporary restraining order and order directing the Bank to interplead the money in the Accounts with the Tribal Court. Legal counsel for the Bank did not make an appearance at the hearing and did not file any written opposition to the Tribe's motion.

31. At the conclusion of the hearing, the Tribal Court issued a temporary restraining order prohibiting the Bank from allowing any person, other than a person or persons designated by the Tribal Council, from withdrawing any money from the Accounts and ordering the Bank to interplead the money in the Accounts with the Tribal Court ("Order"). A true and correct copy of the Court's March 15, 2013, Order is

hereby incorporated by this reference and attached hereto as **Exhibit M**.

32. On March 18, 2013, at approximately 9:00 a.m., PST, counsel for the Tribe served the Order on counsel for the Bank by mail and e-mail.

33. The Order also set a hearing for March 22, 2013, at 10:00 a.m., PST, on a motion for preliminary injunction, which was to be filed by the Tribe by March 19, 2013. Any opposition was to be filed by March 21, 2013. By agreement of the parties, the hearing date was moved to March 29, 2013. The Tribe was ordered to file a motion for a preliminary injunction by March 26, 2013. The Bank was required to file any opposition to the motion for a preliminary injunction by March 28, 2013.

34. On March 25, 2013, the Tribe filed an amended complaint in the Tribal Court, adding as defendants Reggie Lewis, Chance Alberta, and Carl Bushman, The Amended Complaint added causes of action against Lewis, Alberta, and Bushman and sought injunctive and declaratory relief. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit N.**

35. The Tribe filed and served on all of the defendants its motion for preliminary injunction and supporting brief and declarations on March 26, 2013. The Bank filed it an opposition to the motion on March 28, 2013. Defendants Lewis, Alberta and Bushman did not file an opposition to the motion or any other responsive pleading. True and correct copies of the Tribe's motion papers and the Bank's opposition are attached hereto as **Exhibits O-Q.**

36. On Friday, March 29, 2013, the Tribal Court held a hearing on the Tribe's motion for a preliminary injunction. At the hearing, counsel for the Tribe appeared in person at the Tribal Court on the Picayune Rancheria. Counsel for the Bank, Thomas Gede, appeared to contest the jurisdiction of the Tribal Court. No one appeared on behalf of defendants Lewis, Alberta, or Bushman.

37. Following the hearing, on March 29, 2013, at approximately 1:30 p.m. PST, the Tribal Court entered an order granting the Tribe's motion for a preliminary injunction. A true and correct copy of the March 29, 2013, order is attached hereto as

**Exhibit R.**

38.     March 29, 2013 order, the Court ordered the Bank to pay from the Accounts to Wells Fargo Bank the amount of the loan payment owned pursuant to the indenture and to interplead with the Tribal Court any funds that remained in the Accounts after the loan payment was made.

39.     The Bank refused to comply with the orders issued by the Tribal Court. The Bank instead filed a notice of appeal from the Tribal Court's determination that it had jurisdiction to issue the preliminary injunction to the Tribal Court of Appeals.

40.     On April 1, 2013, legal counsel for the Tribal Council, made an offer to the Bank, the Bondholders under the Indenture, and the Individual Defendants that the Bank could pay the Bondholders the loan payment due under the indenture from the Accounts and allow payments of the operating expenses of the Casino from the Casino's Operating Account with the Bank.  The Tribal Council and the Bondholders agreed.   The Individual Defendants refused to allow the payment to the Bondholders and the payment of the Casino's operating expenses to be made.

41.     As a result of the Individual Defendants' refusal to agree to the compromise, the Bondholders instructed Well Fargo to direct the Bank to make the Loan payment from the Accounts with the Bank, which Wells Fargo is authorized to do under the DACA.  The Bank made a partial payment based on the money available in the loan account leaving $2.7 million due and payable to Bondholders.

42.     The money in the Accounts was not sufficient to pay the entire loan payment amount.  Because the Individual Defendants refuse to allow any payment from the Chukchansi Economic Development Authority account, the Tribe has been unable to make up the shortfall.  At the time of the filing of this Complaint, although there is sufficient funds in the CEDA account to complete the Loan Payment, the Tribe is not able to make the payment and the Tribe is in default under the terms of the Indenture.

43.     The Tribe seeks recognition and enforcement of the orders entered by the

Tribal Court in the Tribal Court Action with which the Bank refuses to comply to make sure the Bondholders and the Casino operating expenses are paid.

## FIRST CAUSE OF ACTION

### [Declaratory Relief Regarding the Recognition of the Tribal Court's Orders ]

44.     Plaintiff realleges each of the allegations set forth in Paragraphs 1 through 43 above, and by this reference incorporates those allegations herein as if set forth in full.

45.     Pursuant to the doctrine of comity, federal courts are obligated to recognize and enforce tribal court judgments as long as: (1) the tribal court had personal jurisdiction over the parties; (2) the tribal court had subject matter jurisdiction over the claims; and (3) the parties were provided with due process.

46.     The Tribal Court had personal jurisdiction over the Bank in that, at all times relevant to the events that were the basis for the issuance of all orders issued or entered by the Tribal Court in the Tribal Court Action, the Bank was in a voluntary contractual relationship with the Tribe that was entered into on tribal trust land relating to the Casino funds.  All Casino funds are generated on the Tribe's Picayune Rancheria ("Reservation") trust land by the Tribe's Casino, which is wholly owned and operated by the Tribe. The money is essential to the functioning of the Tribe's government and the Casino.  The Bank's conduct, therefore,  threatens the political integrity, the economic security, and the welfare of the Tribe. The Tribal Court had personal jurisdiction over the Individual Defendants in that all three defendants are members of the Tribe who where personally served with a copy of the Tribal Court summons and Amended Complaint.

47.     The Tribal Court had subject matter jurisdiction over the claims raised by the Tribe pursuant to the Law and Order Code of the Tribe, Title I, Chapter 1, Sections 1-2-1 through 1-2-7, in that the Tribe plead a cause of action against the Bank for breach of contract entered into on the Reservation and for interpleader of the Tribe's funds maintained at the Bank and plead a cause of action against the individual

defendants for interfering with the ability of the Tribe to govern itself.

48. The Bank and individual defendants was provided with due process of law throughout the Tribal Court Action. The Tribal Court conducted all of the proceedings before it pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. During the Tribal Court proceedings, the Bank and individual defendants were provided with notice and the opportunity to be heard.  Legal counsel for the Bank and individual defendants were given notice of and an opportunity to participate in all of the hearing conducted by the Tribal Court. The Bank and individual defendants voluntarily did not participate in the hearing on the Tribe's motion for a temporary restraining order, which took place on March 15, 2013.  The Bank and individual defendants did not submit any evidence or argument to the Tribal Court in opposition to the Tribe's motion for a temporary restraining order and for an order that the Bank interplead the money in the Accounts with the Tribal Court. The Bank did file an opposition to the Tribe's motion for preliminary injunction and did appear at the hearing on the motion for preliminary injunction to argue that the Tribal Court lack jurisdiction over the Bank, while the individual defendants did not.

49. The Tribal Court's orders are entitled to comity, recognition, and enforcement by this Court.

**SECOND CAUSE OF ACTION**

**[Injunctive Relief Regarding the Enforcement
of the Tribal Court's Orders ]**

50. Plaintiff realleges each of the allegations set forth in Paragraphs 1 through 49 above, and by this reference incorporates those allegations herein as if set forth in full.

51. On March 18, 2013, Counsel for the Tribe contacted legal Counsel for the Bank inquiring as to whether or not the Bank was going to comply with the Tribal Court's Order. Counsel for the Bank acknowledged receipt of the Tribal Court Order and advised Counsel for the Tribe that he would review the Order and other documents pertain to the actions taken by the Tribal Council at its March 15, 2013, Special Council

Meeting, and get back to the Tribe's legal Counsel and advise him as to whether the Bank would comply with the Order.

52. On March 19, 2013, Counsel for the Tribe again called Counsel for the Bank and again asked Council for the Bank whether the Bank would comply with the Tribal Court's Order. Counsel for the Bank advised Counsel for the Tribe that the Bank would not comply with the Tribal Court's Order. On March 19, 2013, Counsel for the Tribe called Counsel for the individual defendants to asked Council for the individual defendants whether the individual defendants would comply with the Tribal Court's Order. Counsel for the Tribe got the voice mail for Counsel for the individual defendants and left a message regarding the purpose of the call and requested a return call. Counsel for the individual defendants never called back.

53. On March 29, 2013, Counsel for the Tribe contacted and spoke with Counsel for the Bank. In that call Counsel for the Tribe asked Counsel for the Bank whether the Bank was going to comply with the Court's March 29, 2013, preliminary injunction. Counsel for the Bank said the bank was not going to comply with the Tribal Court's March 29, 2013 Order, but instead was going to file an appeal, appealing the Order to the Tribal Court of Appeals.

54. The Tribal Court has both personal and subject matter jurisdiction over the Bank and individual defendants, and the Bank and individual defendants has an obligation to comply with the Tribal Court's Order and any future orders or any judgment issued or entered by the Tribal Court in the Tribal Court Action.

55. An actual controversy exists between the Tribe and the Bank and individual defendants in that the Tribe contends that the Bank and individual defendants has an obligation to comply with the Tribal Court's Order, and all orders and any judgment entered by the Tribal Court in the Tribal Court Action, while the Bank and individual defendants contends that it does not.

56. Unless the Bank, their employees and agents and the individual defendants are provisionally and permanently restrained and enjoined from refusing to

recognize and comply with the Tribal Court Order or any and all orders and judgment issued or entered by the Tribal Court in the Tribal Court Action, the Tribe will suffer severe and irreparable harm for which the Tribe has no plain, speedy, or adequate remedy at law, in that the Tribe will be unable to operate its Casino, the Casino will be unable to produce the revenues necessary for the Tribe to operate essential governmental services, the Tribe will be unable to make its loan payment, and hundreds of Tribal and non-Tribal employees will lose their jobs, causing the Tribal government to effectively stop operating.

57.   The Tribal Court's Order and all orders and any judgment issued or entered by the Tribal Court in the Tribal Court Action are entitled to comity, recognition, and enforcement by this Court.

WHEREFORE, the Tribe prays that judgment be entered against the Bank and individual defendants as follows:

1.   For an order recognizing the Tribal Court's temporary restraining order and preliminary injunction ordering the Bank to pay from the Accounts the Tribe's loan payment which was due to Wells Fargo Bank on April 1, 2013, and interplead the money remaining in the Accounts with the Tribal Court;

2.   For an order requiring the Bank to comply with the temporary restraining order and preliminary injunction issued or entered by the Tribal Court in the Tribal Court Action until the Bank has exhausted its Tribal Court remedies;

3.   For an order requiring the Bank to interplead the money remaining in the Tribe's Accounts after the loan payment is made with the Tribal Court;

4.   For an order requiring the Individual Defendants to comply with the temporary restraining order and preliminary injunction issued or entered by the Tribal Court in the Tribal Court Action until the Individual Defendants have exhausted their Tribal Court remedies;

5.   That the Court award the Tribe its court costs and reasonable attorney's fees, and;

6. That the Court grant such other and further relief as may be deemed appropriate.

DATED: April 25, 2013                         RAPPORT AND MARSTON

By: _____
Lester J. Marston
Attorney for the Tribe

S:\LJM\Pldgs13\Picayune\USDC\RaboBank\Complaint.FINAL.FILED.wpd   14